[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12450
_____

D.C. Docket No. 1:13-cv-20035-JLK

XILENA M. CACERES,
on behalf of herself and all others similarly situated,

Plaintiff-Appellant,

versus

MCCALLA RAYMER, LLC,
a Georgia limited liability company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 26, 2014)

Before MARCUS and ANDERSON, Circuit Judges, and GOLDBERG,* Judge.

ANDERSON, Circuit Judge:

_____

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by
      designation.

Xilena Caceres appeals the district court's dismissal of her putative class action suit against law firm McCalla Raymer for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA" or "the Act"). The district court granted McCalla's motion to dismiss, reasoning that its letter to Caceres was not an initial communication, as defined by the Act, and that the alleged error in the letter was not misleading. Caceres appeals, arguing that the district court got both conclusions wrong.

## I.    FACTS AND PROCEDURAL HISTORY

Caceres received a letter from McCalla Raymer dated October 19, 2012, which stated that Caceres was behind in her payments on her residential mortgage and owed the lender, Reverse Mortgage Solutions, $269,786.81. Invoking the Act, the letter stated that McCalla represented the interests of the lender and that Caceres could dispute the validity of the debt within thirty days of the receipt of the letter. The letter stated that failure to dispute within that period of time would result in the debt being assumed valid by the creditor, whereas the Act requires a statement that the debt collector—not the creditor—will assume the debt's validity in the case of a failure to dispute within thirty days. The letter provided her with the law firm's phone number to inquire about the amount to be paid, in certified funds. It also gave the law firm's address for written inquiries. Finally, it stated,

2

"This communication is for the purpose of collecting a debt, and any information obtained from the debtor will be used for that purpose."  This was the first communication that Caceres received from McCalla.

Although the subject line was "Reverse Mortgage Solutions, INC. vs. XILENA CACERES," the letter was not accompanied by the service of any papers initiating a lawsuit, nor did it provide any other information pertaining to a legal matter.  It did state, "Even though you are required to file a response to the lawsuit prior to the thirty (30) days, your validation rights, as set forth in this notice, shall not expire for thirty (30) days."  This statement, a stray reference to the creditor as plaintiff, and the caption were the only indications that a lawsuit was forthcoming.  A foreclosure action was indeed filed three days later and the complaint was served on Caceres two days after that.

Caceres brought suit pursuant to 15 U.S.C. § 1692e, which prohibits debt collectors from using false or deceptive means to collect a debt.  The FDCPA also requires the debt collector to send the debtor a written notice containing certain information in an initial communication (or provided within five days).  This written notice is sometimes referred to as a validation notice.  The required information includes the amount of the debt, the name of the creditor to whom the debt is owed, and information about disputing the debt.  15 U.S.C. § 1692g(a).  Specifically, and of importance in this case, the Act requires a statement that a

3

failure to dispute the amount within thirty days will result in the debt collector assuming that the debt is valid. § 1692g(a)(3).

The district court dismissed Caceres' class action suit. It held that the letter was not an initial communication as defined in the Act because it was issued regarding a foreclosure and thus fell under an exception to the definition of communication. In the alternative, the court held that even if the letter were, the technical violation of the statute would not mislead the least sophisticated consumer regarding the nature of her rights. We first address the initial communication issue, and then the issue of whether the letter was misleading.

## II.    DISCUSSION

A.    Was the Letter an Initial Communication?

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). As noted above, the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Act provides no definition of initial communication (i.e., the required validation notice)

4

although it does define communication: "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The Act's validation notice provision only excludes two types of communications from the category of initial communications that trigger the requirements of § 1692g(a): formal legal pleadings and notices regarding privacy rights and data security breaches that are required by law and not provided in connection with debt collection efforts.[1] 15 U.S.C. § 1692g(d) & (e).

Several courts have stated that the Act defines communication expansively. The Second Circuit held that if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act. Romea v. Heiberger & Assocs., 163 F.3d 111, 116 (2d Cir. 1998). This Court adopted that reasoning in Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1218 (11th Cir. 2012), where we rejected a law firm's argument that a letter pertaining to a secured debt did not fall under the Act's strictures. In Reese, we looked at the language of the letter to determine that it was an attempt to

---

[1] These exceptions read:
(d) Legal pleadings
A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section.
(e) Notice provisions
The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by Title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. § 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.
15 U.S.C. § 1692g(d) & (e).

5

collect a debt.  Id. at 1217.  We pointed specifically to the statements in the letter that the lender demanded full and immediate payment, threatened that unless the debtors paid, attorneys' fees would be added, and stated that the law firm was attempting to collect a debt and was acting as a debt collector; we held it was an attempt to collect a debt.  Id.  We rejected the law firm's argument that it was simply to inform the debtors that the lender was seeking a nonjudicial foreclosure; we stated we would not ignore the statements demanding payment and pointed out that a communication can have more than one purpose.  Id.  We stated, "The fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt within the meaning of § 1692e."  Id.

Beginning, as we should, with the language of the statute, we agree that the definition of communication is very broad.  As noted above, it is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  Also, as noted above, the prohibition of "false, deceptive, or misleading" representations applies "in connection with the collection of any debt."  § 1692e.  In turn, the exception to the definition of "initial communication" clearly exempts "[a] communication in the form of a formal pleading."  § 1692g(d).

We conclude that the letter is a communication in connection with the collection of a debt; it is an attempt to collect a debt.  And we conclude that the

exception does not apply.  It is evident that this letter was not a formal pleading: it is addressed "Dear Property Owner" and has the firm's letterhead on it, not a court's; it states that it is "for the purpose of collecting a debt;" it refers in two additional paragraphs to "collection efforts;" it states that collections efforts will continue and that additional attorneys' fees and costs will accrue; it states the amount of the debt and indicates that it must be paid in certified funds; and it gives the name of the creditor and supplies the law firm's phone number in the paragraph where it talks about payments.[2]  The only references to a lawsuit were fleeting: the subject line contained what appeared to be a caption; there was one reference to Caceres as "plaintiff;" and there was one reference to answering "the lawsuit."  No reasonable person would consider this to be a pleading, let alone a formal one.

Thus we conclude that the district court erred when it found that the letter from McCalla was not an initial communication under the Act.

B.   Was the Letter "False, Deceptive, or Misleading"?

---

[2]    Although <u>Reese</u>, in holding that the letter from the law firm was an initial communication, did focus, <u>inter alia</u>, on the fact that the letter there made an express demand for payment, 678 F.3d at 1214, and although there may not have been such an express demand in this case, it is clear in this case that there was an implicit demand for payment.  The letter states the amount of the debt, describes payment by the debtor in certified funds, gives the phone number and address of the law firm to which payment is obviously contemplated, and expressly states that the letter is for the purpose of collecting a debt.  Under these circumstances, we have no trouble concluding that the letter qualifies as an initial communication.  See <u>Gburek v. Litton Loan Servicing LP</u>, 614 F.3d 380, 384-87 (7th Cir. 2010) (rejecting the defendant's argument that an explicit demand for payment is a prerequisite for an initial communication).

The absence of one or more of the statutory requirements for the validation notice is actionable as a violation of 15 U.S.C. § 1692e[3] under our precedent if the variance is one that would tend to mislead the least sophisticated consumer.  Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).  The court in LeBlanc v. Unifund CCR Partners, 601 F.3d 1185 (11th Cir. 2010) (per curiam), discussed the standard:

> The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.  However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness.

Id. at 1194 (internal quotations and citations omitted).

Here, the letter substituted "creditor" for "debt collector" when informing the consumer of who would assume that the debt was valid if the debt was not contested within thirty days.[4]  We assume arguendo, without deciding, that the

---

[3]    In pertinent part, 15 U.S.C. § 1692e reads:
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . . .
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
. . .
15 U.S.C. § 1692e.

[4]    The statute requires in the initial communication or within five days: "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the

least sophisticated consumer might be deterred from pursuing his or her rights to dispute the debt—e.g. might believe that his or her right to dispute the debt would be adversely affected—if he or she failed to dispute the debt within the thirty-day period.  See Iyamu v. Clarfield, Okon, Salomone, & Pincus, P.L., 950 F. Supp. 2d 1271, 1274 (S.D. Fla. 2013).  However, because the debt collector is obviously the agent of the creditor, the same implication arises from the notice required by § 1692g(a)(3) as from McCalla's erroneous statement.  In other words, the least sophisticated consumer would think that if the debt collector was entitled to assume that the debt is valid, the creditor would have the same right.  Thus, because the same implication arises whether or not the language of the notice is "assumed valid by the debt collector," as required by statute, or "assumed valid by the creditor," as stated in the letter, the letter did not mislead.[5]

---

debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  15 U.S.C. § 1692g(a)(3).

[5]    We note that the Second Circuit in Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 366 (2d Cir. 2005), reached the same result on similar facts, albeit by different reasoning. We also note that courts have described the legal effect of the assumed validity of the provision as follows.  It conveys "to the consumer that failure to dispute the debt permits the debt collector to proceed for collection purposes on the 'temporary fiction' that the debt is valid [, that f]ailure to dispute a debt has no legal effect on a debtor's rights . . . [and that i]n any subsequent collection action, the burden would remain on the debt collector . . . to prove the validity of the debt." Orr v. Westport Recovery Corp., 941 F. Supp. 2d 1377, 1381-82 (N.D. Ga. 2013) (alteration in original) (quoting Harlan v. NRA Group, LLC, 2011 WL 500024, at *4 (E.D. Pa. Feb. 9, 2011)).  However, we do not think that the least sophisticated consumer would understand or be aware of that fiction.  Thus, because the language actually required by the statute creates the same implication, we cannot conclude that McCalla's actual language was any more misleading than the precise language required by the statute.

9

Because we hold that the letter, which was an initial communication, would not mislead the least sophisticated consumer, we affirm the decision of the district court.

AFFIRMED.

---

Most of the cases relied upon by Caceres involved validation notices that omitted altogether the phrase "by the debt collector," § 1692g(a)(3), and did not advise the debtor what entity would be entitled to assume the debt to be valid.  See, e.g., Koch v. Atkinson, Diner, Stone, Mankuta, & Ploucha, P.A., 2011 WL 4499100 (S.D. Fla. Sept. 27, 2011); Guerrero v. Absolute Collection Serv., Inc., 2011 WL 8183860 (N.D. Ga. Oct. 6, 2011); Nelson v. Select Fin. Servs., Inc., 430 F. Supp. 2d 455 (E.D. Pa. 2006).  Those cases concluded that a validation notice that did not identify the entity which could assume the validity of the debt meant that the least sophisticated consumer might reasonably believe that the failure to dispute the debt within thirty days would entitle a court or other authoritative entity to assume the validity of the debt— i.e., that the debtor's right to dispute the debt after the thirty days would be adversely affected. Of course, such a perception would be inconsistent with the statute, which expressly provides that the failure of the debtor to dispute the debt within thirty days "may not be construed by any court as an admission of liability." § 1692g(c).  The risk that the least sophisticated consumer would think that a court or other authoritative agency would be entitled to assume the validity of the debt—the risk feared by those cases—is not present in the instant case.  Thus, the cases relied upon by Caceres are distinguishable.  Only one case, Iyamu v. Clarfield, Okon, Salomone, & Pincus, PL, 950 F. Supp. 2d 1271 (S.D. Fla. 2013), actually supports Caceres' position.  For the reasons set forth in this opinion, we disagree with the result of Iyamu.

Finally, we note that debt collectors might consider including in their validation notices the substance of § 1692g(c).  Section 1692g(c) provides as follows: "The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer."  15 U.S.C. § 1692g(c).